UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS L. PANEK, as ADMINISTRATOR of the
BUFFALO LABORERS WELFARE FUND, BUFFALO
LABORERS PENSION FUND, BUFFALO LABORERS
EDUCATION AND TRAINING FUND, BUFFALO
LABORERS SUPPLEMENTAL EMPLOYMENT
BENEFIT FUND and BUFFALO LABORERS ANNUITY
FUND and LABORERS LOCAL 210, LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA,

                        Plaintiffs,

     v.                                                             DECISION AND ORDER
                                                                   02-CV-333(A)

CIMATO BROS. CONSTRUCTION, INC. and CIMATO
BROS., INC.,

                        Defendants.

---

## **INTRODUCTION**

Laborers' Local No. 210 brought this action against Cimato Bros. Construction, Inc., a construction company that employs both union and nonunion laborers, to enforce a series of collective bargaining agreements, even though Cimato never signed the agreements and never joined the multi-employer bargaining unit that negotiated them. Local 210 claims that Cimato is nevertheless bound by the agreements, because over a 5-year period, Cimato submitted benefit fund contributions and remittance reports to the union trust funds on behalf of some of its employees, thus manifesting an intent on the part of Cimato to be bound by the agreements. The Court finds that Cimato's conduct in making benefit contributions was not, by itself, sufficient to show its intent to be bound by the agreements, especially in light of other conduct by

Cimato that was inconsistent with the agreements.

## **PROCEDURAL BACKGROUND**

Plaintiffs Thomas L. Panek, as Administrator of the Buffalo Laborers Welfare Fund, Buffalo Laborers Pension Fund, Buffalo Laborers Education and Training Fund, Buffalo Laborers Supplemental Unemployment Benefit Fund and Buffalo Laborers' Annuity Fund (hereinafter "Local 210 Benefit Funds") and Laborers Local 210, Laborers' International Union of North America (hereinafter "Local 210") (together with the Local 210 Benefit Funds, jointly "Plaintiffs"), bring this action under Sections 502 and 515 of the Employee Retirement Income Security Act and Section 301 of the Labor Management Relations Act, against defendant Cimato Bros. Construction, Inc., to enforce a series of collective bargaining agreements ("CBAs") negotiated by Local 210 with the Council of Utility Contractors, a multi-employer bargaining unit.[1]

Currently before the Court are the Plaintiffs' motion for partial judgment as a matter of law ("JMOL") and Cimato Bros. Construction, Inc.'s cross-motion for JMOL. Both motions are based on a joint stipulation of facts.

## **STATEMENT OF FACTS**

Cimato Bros., Inc. ("CBI") was incorporated as a New York Corporation on July 5, 1963. CBI's business during the 1970's and 1980's consisted of municipal

---

[1] Plaintiffs also brought suit against Cimato Bros. Inc., but are no longer pursing any claims against that defendant.

sewer work. In the late 1970's and 1980's, CBI, in addition to municipal sewer work, became involved in residential project developments and real estate.

The Council of Utility Contractors, Inc. ("CUC"), a multi-employer collective bargaining unit, was formed in 1976. CBI was a CUC charter member. CUC would negotiate CBAs with various building trades, including Local 210, on behalf of its members.

In 1995, CBI ceased engaging in the construction business. CBI continued, however, to engage in the real estate business.

Cimato Bros. Construction, Inc. ("Cimato"), was incorporated on January 4, 1996. CBI sold construction equipment, vehicles and personal property to Cimato.[2]

Although CBI was a member of CUC, Cimato never became a member of CUC and never authorized CUC to bargain on its behalf.

CUC and Local 210 entered into a series of CBAs effective April 1, 1999 through March 31, 2002, April 1, 2002 through March 31, 2005 and April 1, 2005 through March 31, 2008. Cimato, however, never signed a CBA with Local 210.

From April 1999 until sometime in 2004, Cimato paid to Local 210 Benefit Funds contributions on behalf of some of its employees. Such payments were accompanied by pre-printed benefit forms, referred to as remittance reports, prepared by Local 210 Benefit Funds. Sometimes the forms were signed by a representative of Cimato and sometimes they were unsigned.

---

[2] Plaintiffs have withdrawn, with prejudice, their claim that Cimato was an alter ego of CBI.

Contrary to the CBAs between CUC and Local 210, Cimato has: (1) never held a pre-job conference with Local 210; (2) never allowed Local 210 or Local 210 Benefit Funds to conduct an audit; (3) never appointed or had a Local 210 shop steward on any job; and (4) paid different wages to nonunion laborers, who were performing the same work as union laborers. Cimato has never requested any laborers from Local 210 and Local 210 has never referred any laborers to Cimato. Nor has Local 210 ever withdrawn any laborers from a Cimato job to enforce payment of wages, benefits or dues, even though it has the right to do so under the CBAs.

## **DISCUSSION**

"[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound, . . . rather [a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, 385 F.3d 761, 766 ( 7th Cir. 2004) (internal quotations and citations omitted), cert. denied, 544 U.S. 999 (2005). Thus, "a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement. Acceptance . . . can be manifested by conduct as well as by words." Id. at 767 (internal quotations and citations omitted); see also Brown v. C. Volante Corp., 194 F.3d 351, 355 (2d Cir. 1999), cert. denied, 529 U.S. 1004 (2000).

In determining whether an employer is bound by an unsigned CBA as a result of the employer's conduct, courts have examined, among other factors, the payment of union wages, the remission of union dues, the payment of fringe benefit

contributions, the existence of other agreements evidencing assent, and the submission of the employer to union jurisdiction, such as submitting to an audit by the union or to grievance procedures.  Id. at 766 (citing cases).  When making this determination, the court must view the employer's conduct as a whole.  Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co., 751 F.2d 763, 771 (5th Cir. 1985).

       The issue here is whether Cimato's submission of benefit payments and remittance reports to the Local 210 Benefit Funds was sufficient, absent any other factors, to manifest an intent by Cimato to be bound by the unsigned CBAs between CUC and Local 210.  The Court finds that when taken as a whole, Cimato's conduct did not manifest an intent to be bound.

       Two Fifth Circuit cases are on all fours with the instant case:  Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co., 751 F.2d 763 (5th Cir. 1985) and Firesheets v. A.G. Bldg. Specialists, Inc., 134 F.3d 729 (5th Cir. 1998).  In Holleman, carpenter union trust funds brought suit against a construction company to recover health and welfare benefit contributions they claimed were owed under a CBA negotiated by a multi-employer bargaining agent.  The trust funds argued, in part, that the employer was bound by an unsigned CBA based on the fact that the employer, at the request of some of its employees, submitted benefit contributions and reports to the trust funds over a 4-year period.   The Fifth Circuit held that the employer's conduct was insufficient to bind the employer to the unsigned CBA, stating:

> The only conduct manifesting an intent to be bound by the [CBA] was the [employer's] payment of benefit contributions from 1978 to 1982.  However, the [employer] did not make these benefit contributions on behalf of all of its Union employees, nor did it use the Union hiring hall.  Taken as a whole, the [employer's] conduct

5

> did not manifest an intent to be bound by the [CBA]. Having declined to accept the benefits of the agreement, the [employer] should not be bound by its burdens.

Holleman, 751 F.2d at 771 (citations omitted).

In Firesheets, carpenter union trust funds brought suit against a construction company to recover benefit contributions they claimed were owed under a CBA, even though the CBA had expired by its own terms several years earlier. Although the CBA had expired, the trust funds argued that the employer was still bound by the CBA because the employer's conduct, in continuing to make voluntary contributions to the trust funds on behalf of some of its employees for approximately 10 years after the expiration date, manifested the employer's intent to continue to be bound. The employer argued that although it continued to make voluntary contributions on behalf of some of its employees, its overall conduct was inconsistent with the CBA and therefore belied any claim of intent to be bound. For example, the employer hired nonunion carpenters, unilaterally set wages, did not adjust wages when given notice of project agreements by the union, did not give holiday pay to its employees, and made trust fund contributions only for those employees who asked for contributions. The district court granted summary judgment in favor of the employer and the Fifth Circuit affirmed, holding that the employer's conduct was inconsistent with an intent to be bound by the CBA. Firesheets, 134 F.3d at 731-32.

Here, although Cimato voluntarily submitted contribution payments and remittance reports to the Local 210 Benefit Funds on behalf of some of its employees over a 5-year period, the remainder of its conduct was inconsistent with the CBAs. For example, Cimato: (1) never held a pre-job conference with Local 210; (2) never allowed

Local 210 or the Local 210 benefit Funds to conduct an audit; (3) never appointed or had a Local 210 shop steward on any job; (4) paid different wages to nonunion laborers, who were performing the same work as union laborers; (5) paid contributions on behalf of some, but not all, of its employees; and (6) never requested any laborers from Local 210.  Thus, like the employers in Holleman and Firesheets, Cimato's conduct, taken as a whole, did not manifest an intent to be bound by the CBAs.

The cases cited by the Plaintiffs are distinguishable, because in those cases, the employers' conduct consisted of more than the mere payment of benefit contributions.  For example, in Brown v. C. Volante Corp., 194 F.3d 351 (2d Cir. 1999), the case on which the Plaintiffs primarily rely, in addition to making payments to the union trust funds, the employer sent a letter to the trust funds acknowledging its responsibility to the funds.  In holding the employer bound by the unsigned CBA, the Second Circuit relied primarily on this letter.  Id. at 354-56.

In Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, 385 F.3d 761 ( 7th Cir. 2004), in addition to making payments to the union trust funds, the employer: (1) remitted union dues on behalf of employees and paid wages at the rates prescribed by the CBA; (2) cooperated in an audit by the trust funds; (3) requested bricklayers from the union or its apprenticeship program; (4) donated a truck to the union's training program; and (5) took no action to challenge jurisdiction after the Joint Arbitration Board found it guilty of labor violation charges under the CBA brought by another union.  Taking this conduct as a whole, the Seventh Circuit found that the employer was bound by the unsigned CBA.  Id. at 768-69.

In Seabury Constr. Corp. v. District Council of N.Y. & Vicinity of the United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 461 F. Supp.2d 193 (S.D.N.Y. 2006), in addition to making payments to the union trust funds, the employer: (1) increased its surety bond as required under the CBA; and (2) requested millwrights from the union. The court therefore found the employer bound by the unsigned CBA. Id. at 198-99.[3]

## CONCLUSION

For the reasons stated, the Court grants Cimato's motion for JMOL and denies Plaintiffs motion for partial JMOL. The Clerk of Court shall take all steps necessary to close the case.

SO ORDERED.

s/ *Richard J. Arcar*a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: October 15, 2007

---

[3] Plaintiffs also rely on Service Employees Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC, 2006 WL 692000 (S.D.N.Y. Mar. 16, 2006). However, that case involved a successor employer, a circumstance not present in this case. In any event, the Coby court found that "in complying with *all* relevant terms of the CBA . . .," the successor employer implicitly adopted the CBA. Id. at *4 (emphasis added). Here, in contrast, most of Cimato's conduct did not comply with the CBAs.